UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISMAEL VEGA,<br><br>             Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Case No. 1:23-cv-01584-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 15, 19, 22-23). |

      This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

      Plaintiff presents the following issues:

1. The ALJ failed to properly develop the record and obtain any medical opinion evidence, erroneously relying upon her own lay interpretation of the medical data.
2. The ALJ failed to properly consider the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints.

1

(ECF No. 15 at 5)[1]. Having reviewed the record, administrative transcript[2], parties' briefs[3], and the applicable law, the Court finds as follows.

## I. ANALYSIS

### A. Residual Functional Capacity (RFC) and Failure to Develop the Record

Plaintiff ultimately challenges the following RFC assessed by the ALJ:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he should not be involved in work that requires more than occasional hearing, and should not be involved in work related to the safety of others, due to hearing loss.

(A.R. 25). Specifically, Plaintiff argues the ALJ's failure to develop the record by obtaining a medical opinion "that considered all relevant testing and data in evaluating the severity and limiting effects of Plaintiff's hearing loss" was prejudicial because the RFC is supported only by the ALJ's lay speculation that Plaintiff is capable of work requiring occasional hearing and not by substantial evidence. (ECF No. 15 at 7-9). Plaintiff asserts that the ALJ's finding that Plaintiff is capable of occasional hearing "is quite clearly unsupported speculation . . . based on the raw medical data from various audiometry tests, and a lay estimation of the Plaintiff's ability to hear during the relevant period." (ECF No. 20 at 3). Plaintiff further argues that because he was unrepresented during the administrative proceedings, the ALJ had a heightened duty to develop the record by obtaining an exam, especially in light of ambiguities and additional testing submitted after the state agency physicians reviewed Plaintiff's records. (*Id.* at 6).

In response, Defendant argues that an ALJ is not required to obtain medical expert testimony or rely on a medical opinion in deciding every claim, and that the Ninth Circuit has confirmed that ALJs may independently review and form conclusions about medical evidence. (ECF No. 19 at 6-7, 16). Defendant argues that medical expert testimony was unnecessary because "[t]here is nothing to support Plaintiff's contention that the . . . testimony would

---

[1] Unless otherwise indicated, cited page numbers refer to the pagination appearing at the bottom of each page and not the blue numbers generated by the CM/ECF system.

[2] The Court's citation to the administrative transcript is indicated by "A.R."

[3] On October 23, 2024, the Court directed the parties to submit supplemental briefing on the issue of harmless error. (*See* ECF Nos. 21-23).

1 contradict his medical source's April 2017 notes documenting his moderate, symmetric SNHL[4]
2 with 100% discrimination bilaterally." (*Id.* at 8). Additionally, Defendant says a consultative
3 evaluation was not warranted because a 2022 exam would not have reasonably related to 2016,
4 the date last insured. (*Id.*). Defendant also argues that the ALJ had no further duty to develop the
5 record or, alternatively, that any such duty was discharged; that the ALJ found the state Agency
6 physicians' assessments unpersuasive; and the ALJ's findings were well supported by the
7 evidence. (*Id.* at 6-9, 16).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports).

In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975) (internal quotation marks omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted and quotation marks omitted). Lastly, an ALJ has a duty to develop the record "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also* 20 C.F.R. 404.1519a (stating a consultative examination may be required to resolve inconsistencies in

---

[4] "SNHL" refers to sensorineural hearing loss. (*See, e.g.*, A.R. 24).

1    evidence, or where evidence as a whole is insufficient to make a determination).

2        The ALJ's opinion first discussed Plaintiff's testimony about his subjective symptoms,
3    including his difficulty understanding speech, and his inability to pass the physical exam for his
4    former job as a correctional officer. (A.R. 25-26). The ALJ also pointed to Plaintiff's reported
5    daily activities, including "maintaining everything in his house and working on projects, such as
6    fixing plumbing issues, cleaning, washing clothes and dishes, maintaining his yard, and doing
7    things in the garage." (A.R. 27). But the ALJ did not explain how any of this evidence supports
8    the conclusion that Plaintiff was capable of occasional hearing or indicates that Plaintiff's hearing
9    varies from time to time.

10       As to Plaintiff's medical records, the ALJ noted that a record from April 2017, after the
11   date last insured, documented an audiogram "showing moderate, symmetric SNHL with 100%
12   discrimination bilaterally." (A.R. 26) (citation omitted). Next, a May 2022 audiogram "showed
13   findings consistent with bilateral SNHL, with an average air conduction threshold of 70 decibels
14   on the left and 75 decibels on the left[5], and 100% word recognition at 60 decibels on the left and
15   80 decibels on the right." (*Id.*). Additionally, treating records after the date last insured detailed
16   Plaintiff's difficulties with hearing aids but the ALJ noted, "he was at times able to hear
17   conversation well with adjustment, and . . . the claimant was able to hear appropriately during the
18   telephone hearing despite hearing loss." (*Id.*) (citation omitted). Lastly, the ALJ considered
19   records from the alleged onset date through the date last insured, including from April 2015, that
20   "document diagnosed bilateral SNHL with subjectively reported 50% hearing loss and referral to
21   audiometry." (*Id.*). But again, these records address the amount of Plaintiff's hearing loss, but do
22   not support a finding that Plaintiff's hearing is occasional or that it varies over time.

23       Next, the ALJ found significant that Plaintiff could participate in the telephonic hearing,
24   "without the use of any assistive technologies offered, such as closed captioning." (A.R. 27). But
25   as the parties point out in their briefs, Plaintiff wore Airpods during the telephonic hearing, and as
26   the ALJ noted when recounting Plaintiff's testimony, "[Plaintiff] stated that earphones and
27   Airpods help more than hearing aids, but he continued to have difficulty hearing in 'real-world'

---

[5] The Court assumes that the ALJ intended to refer to readings from Plaintiff's left and right ears.

4

environments." (A.R. 26). Additionally, the ALJ considered the statement of Plaintiff's wife, who indicated that she and her daughter "had to shout for him to hear them." (A.R. 28) (citation omitted). While this evidence points to Plaintiff being able to hear to some extent, i.e., with Airpods or when others are shouting, they do not support a finding of occasional hearing.

For the reasons stated above, the Court concludes that the ALJ's determination that Plaintiff was capable of occasional hearing is not supported by substantial evidence and that the ALJ erred in failing to obtain a consulting medical opinion to assess limitations associated with Plaintiff's hearing impairment.

**B. Harmless Error**

The Court next considers whether this error was harmless. An error is harmless if (1) "it is inconsequential to the ultimate nondisability determination," or (2) "if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Triechler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations and internal quotation marks omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded by regulation on other grounds as stated in Heartsong v. O'Malley*, No. 23-35581, 2024 WL 4850824, at *1 (9th Cir. Nov. 21, 2024) (Ninth Circuit found harmless error where ALJ misstated facts about claimant but the "ALJ would have reached the same result absent the error," and in instances "where it was clear [the error] did not alter the ALJ's decision") (citations omitted).

Defendant's responsive brief argues that any error was harmless because the vocational expert testified that there were sufficient jobs in the economy if Plaintiff could communicate by virtue of airpods.

Specifically, the vocational expert testified as to jobs in the national economy that someone with Plaintiff's RFC and other factors could perform. After concluding that Plaintiff would not be able to perform his past relevant work as a correctional officer, based on Plaintiff's age, exertional limitations, and RFC, the vocational expert testified as follows:

> Q   And what about other work in the national economy?
>
> A   Well, there are other jobs that would fit the hypothetical. For example, if

> we look at the medium level, there is a Packer, Agricultural Produce. The DOT code is 920.687-134. It's unskilled, SVP 2, it's medium exertional, and the numbers nationally are 20,000. There is also a Hand Launderer. The DOT code is 361.684-010, unskilled, SVP 2, medium exertional, numbers nationally are 25,000 plus. The third within that hypothetical at medium is a Laundry Worker I. The DOT code is 361.684-014, unskilled, SVP 2, medium exertional, nationally 50,000.

A.R. 57. The vocational expert also testified as to jobs that could be performed by an individual with similar limitations but who can communicate by Airpods:

> Q        This individual has no exertional – thanks. This individual has no exertional limits, same age, education and work experience as previously identified. And this individual has hearing loss but can communicate by virtue of air pods. Is there other work in the national economy that that individual could perform?
>
> A        Well, given that hypothetical, Your Honor – one moment. Could I look at the light exertional level, there would be work, for example, as an Office Helper. That has a DOT code of 239.567-010[6]. It's unskilled, SVP 2, it's light. The numbers nationally are 15,000. I believe also within that hypothetical there would be work as an Order Caller. The DOT code is 209.667-014. It's unskilled, SVP 2, light, nationally 30,000. And just bear with me one moment. One moment. In so many of these jobs they use a phone, but there are other aspects of the job that go beyond it that would be dealing with people probably in an individual capacity and in person.
>
> Q        That's exactly what I was thinking.
>
> A        Yeah, I'm just, I'm not getting anything that's coming up that specifically would just be phone work other than what I've given you, the Office Helper, the

---

[6] The DOT description for Office Helper is: "Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVERER, OUTSIDE (clerical) 230.663-010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial)." 239.567-010 Office Helper, 1991 WL 672232.
The DOT description for Order Caller is: "Reads items listed on order sheets to LABORER, STORES (any industry) who gathers and assembles items or to BILLING TYPIST (clerical) who prepares bills for items. Indicates on order sheets items located and items that are not available. May read items to CHECKER (clerical) I who examines articles prior to shipping. May be designated by kind of data called out to other worker as Weight Caller (clerical); Yardage Caller (textile)." 209.667-014 Order Caller, 1991 WL 671807.

>    Order Caller. Sorry.

A.R. 58-59.

Because Plaintiff did not respond to this argument in its reply brief, the Court ordered supplemental briefing on the issue of harmless error.

Plaintiff's supplemental brief argues that the vocational expert's testimony relied on by Defendant was not reconciled with the DOT and was not credited by the ALJ. (*See* ECF No. 22 at 3) (quoting *Bass v. Commr. of Soc. Sec.*, No. 121CV00495CDBSS, 2023 WL 8878421, at *4 (E.D. Cal. Dec. 22, 2023) ("If there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ is required to reconcile the inconsistency. The ALJ may accomplish this by providing a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled."). Specifically, Plaintiff states that the ALJ "offered no reasonable explanation as to how" the jobs of order caller and office helper could be performed exclusively by phone, particularly considering the vocational expert's testimony that, "[i]n so many of these jobs they use a phone, but there are other aspects of the job that go beyond it that would be dealing with people probably in an individual capacity and in person." (ECF No. 22 at 3). Plaintiff points out that an office helper "requires occasional hearing and talking, and the job description states an employee 'Delivers oral or written messages' and may deliver mail and other messages." (*Id.*). Additionally, Plaintiff states that an order caller "requires *frequent* hearing and talking, and the job description does not indicate the work is done by phone but is performed in conjunction with other clerks." (*Id.*) (emphasis in original).

Defendant's supplemental brief argues that the ALJ's finding that Plaintiff could perform the jobs of an agricultural produce packer, hand launderer, and laundry worker were supported by substantial evidence. Defendant also argues that the vocational expert's testimony regarding jobs going "beyond" the use of a phone referred to other occupations not listed by the expert, and that the jobs of office helper and order caller "specifically would just be phone work." (ECF No. 23 at 2) (quoting A.R. 58-59). Defendant contends that the ALJ did not rely on the vocational expert's testimony regarding jobs that could be performed solely over the phone "not because of any DOT issue . . . but, as the ALJ clearly explained, because he found Plaintiff could perform work

1  involving occasional in-person hearing that did not involve the safety of others." (ECF No. 23 at
2  2) (citations omitted). Additionally, Defendant states that Plaintiff provides no explanation as to
3  why he could not perform other jobs identified by the vocational expert, namely, as a
4  semiconductor wafers sealer, semiconductor packages, or cleaner in housekeeping.

5  Upon review, the Court cannot find based on this record that any error in the RFC was
6  harmless. Although the vocational expert testified that the jobs of order caller and office helper
7  would specifically involve phone work, *see* A.R. 59, the respective job descriptions do not clearly
8  indicate that they could be performed by someone with hearing loss who can communicate solely
9  by Airpods. Thus, further proceedings are necessary to address this potential conflict.
10 Additionally, while the vocational expert's testimony suggests that there may be sufficient jobs in
11 the economy, it is not sufficiently clear from the record.

12 Accordingly, the Court believes remand is appropriate.[7]

13 **II.    CONCLUSION AND ORDER**

14 Accordingly, the decision of the Commissioner of the Social Security Administration is
15 REVERSED and REMANDED, for further administrative proceedings consistent with this
16 decision. Specifically, the ALJ is directed to obtain an opinion of a consulting expert regarding
17 Plaintiff's hearing impairment, reconsider the limitations in the RFC regarding Plaintiff's hearing
18 impairment, and determine whether any change to the RFC affects the ALJ's ultimate decision
19 regarding disability.

20 The Clerk of Court is directed to enter judgment in favor of Plaintiff and against
21 Defendant.

23 IT IS SO ORDERED.

24  Dated:  **January 21, 2025**           /s/ Erica P. Grosjean
25                                          UNITED STATES MAGISTRATE JUDGE

---

[7] Having determined that remand is appropriate, the Court will not reach the remaining argument regarding the ALJ's consideration of Plaintiff's subjective symptoms.

9